```
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| **JENNIFER DORFMEISTER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **NORDSTROM, INC.** | : | **NO. 19-1958** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                             **November 21, 2019**

      This negligence action arises out of injuries plaintiff Jennifer Dorfmeister sustained when she tripped and fell off a fitting platform while having pants altered at defendant Nordstrom's store. Dorfmeister claims Nordstrom's employees were negligent in failing to warn her of the tripping hazard posed by her unpinned pant leg and failing to assist her down from the platform. Nordstrom has moved for summary judgment, contending it had no duty to warn of or guard against an obvious danger.

      There are issues of fact as to whether the danger was known or obvious to Dorfmeister, and whether Nordstrom should have reasonably anticipated the danger. Therefore, we shall deny the motion for summary judgment.

## Factual Background

      Dorfmeister was a frequent shopper at Nordstrom's store at King of Prussia Mall.[1] She had had clothes fitted or altered at Nordstrom and other stores many times in the past.[2] During these past fittings, she had stepped on and off fitting platforms similar to the one used on the date of her accident.[3]

---

[1] Dorfmeister Dep. Tr. at 13:11-13:20 (ECF No. 16).

[2] *Id.* at 21:11-21:13, 109:14-109:19.

[3] *Id.* at 21:14-21:24, 109:2-109:8.

On January 25, 2017, while shopping at Nordstrom, Dorfmeister tried on an outfit.[4] While wearing the outfit and a pair of high-heel shoes, she stepped onto a seven-inch fitting platform and had several photographs taken of her on the platform.[5] The pants "were touching the floor, borderline past the shoe length" and needed hemming.[6] Dorfmeister stepped off the platform and left Nordstrom to visit other stores.[7]

Dorfmeister returned later that evening to purchase the outfit and have the pants altered.[8] She went into the fitting room with a Nordstrom sales associate, Shahrezad Shayegan, and a Nordstrom seamstress, Tahereh Ghaffari.[9] Dorfmeister put on the outfit with the unhemmed pants and a different pair of heels, walked to the fitting platform, and stepped onto it.[10] While she was standing on the platform, Ghaffari pinned her right pant leg and asked her if the length was appropriate.[11] Dorfmeister responded that she could not see whether the length was correct because she was too close to the mirror.[12] Ghaffari stated, "you need to step back then."[13]

---

[4] *Id.* at 8:15-8:18, 102:2-102:6.

[5] *Id.* at 102:7-102:24.

[6] *Id.* at 62:17-62:19, 66:4-66:5.

[7] *Id.* at 9:2-4, 102:17-102:19.

[8] *Id.* at 9:1-9:8, 62:6-62:11.

[9] *Id.* at 9:8-9:9.

[10] *Id.* at 9:8-9:11, 62:11-62:62:20, 64:1-64:8, 101:9-101:11.

[11] *Id.* at 9:11-9:18.

[12] *Id.* at 9:18-9:19.

[13] *Id.* at 9:20-9:21.

With the right pant leg pinned and the left pant leg unpinned, Dorfmeister turned so that her back was facing the mirror and stepped down off the platform.[14] She did not ask for help stepping down, though she had done so on previous occasions.[15] Neither Shayegan nor Ghaffari assisted her or warned her to be careful.[16] As she stepped down, her left heel became tangled in the fabric of the unpinned pant leg.[17] She fell, fracturing her left ankle.[18]

**Standard of Review**

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

---

[14] *Id.* at 19:23-20:5, 53:2-52:7, 108:22-109:1.

[15] Shayegan Dep. Tr. at 67:22-68:4 (ECF No. 16); Dorfmeister Dep. Tr. at 110:18-110:22.

[16] Shayegan Dep. Tr. at 82:8-82:16, 84:16-84:20; Ghaffari Dep. Tr. at 53:16-53:19 (ECF No. 16).

[17] Dorfmeister Dep. Tr. at 19:8-20:1.

[18] *Id.* at 30:1-30:3, 52:15-52:17.

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

A nonmoving party may defeat summary judgment through the use of depositions. *See* Fed. R. Civ. P. 56(c)(1)(A) (a plaintiff may assert that a fact is genuinely disputed by "citing to particular parts of materials on the record, including depositions"). *See also In re CitX Corp.,* 448 F.3d 672, 680 (3d Cir. 2006) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2722, at 373, 379 (3d ed. 1998)) (observing that depositions are "one of the best forms of evidence for supporting or opposing a summary-judgment motion").

## Discussion

A business owner owes a duty to protect its invitees from foreseeable harm. *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). The duty is not absolute. The business owner is not an insurer of the invitee's safety. *Rabutino v. Freedom State Realty*

4

*Co., Inc.*, 809 A.2d 933, 939 (Pa. Super. 2002). The business owner is liable for harm caused by a dangerous condition only if it:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Carrender*, 469 A.2d at 123 (quoting Restatement (Second) of Torts § 343 (1965)).

Where the danger is known or obvious to the invitee, the business owner is not liable for physical harm caused by a dangerous activity or condition. *Id. See also Atkins v. Urban Redevelopment Auth. of Pittsburgh,* 414 A.2d 100, 104 (Pa. 1980) ("[T]he law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee"). For a danger to be "known," the invitee must not only know the danger exists, she must recognize that the condition or activity is dangerous and she must appreciate "the probability and gravity" of the threatened harm. Restatement (Second) of Torts § 343A, cmt. b. A danger is "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." *Id*.

Even if the danger is known or obvious, the owner is liable if it should have anticipated the harm. Restatement (Second) of Torts § 343A. *See also Ferguson v. Great Atl. & Pac. Tea Co., Inc.,* No. 13-778, 2013 WL 6578908, at *4 (E.D. Pa. Dec. 16, 2013). Stated differently, if the business owner should have anticipated that an invitee would risk harm in the face of a known or obvious danger, it can be liable.

5

The question of whether a danger was known or obvious is usually a jury question. *Id.* at 124. However, the court may decide the question where reasonable minds could not differ. *Id.* (citing Restatement (Second) of Torts § 328B cmts. c and d).

Nordstrom argues that it owed no duty to Dorfmeister because the risk in stepping off the platform was obvious. It contends that the duty inquiry focuses on whether a reasonable person in Dorfmeister's position would have recognized the danger, not her subjective awareness of the risk. Nordstrom asserts that a reasonable person would have appreciated the risk of stepping off a seven-inch platform in five-inch heels with one unpinned pant leg, and Dorfmeister failed to exercise reasonable care and judgment in stepping off the platform. According to Nordstrom, she had many safer alternatives, including lifting the pants as she stepped down, stepping down more slowly, or asking for the left leg to be pinned before she stepped down. Nordstrom argues that the danger should have been apparent to Dorfmeister because she was familiar with the platform, the unhemmed pants, and the alterations process.

Dorfmeister contends that genuine issues of fact exist as to whether the danger was known or obvious. She argues that a reasonable person in her position would not have realized the danger because she was "acting in the presence and direction of Defendant's employee."[19] She asserts that Nordstrom has provided no evidence that she subjectively recognized the danger and appreciated the probability and gravity of the harm. She claims because she lacked a reasonable alternative, Nordstrom owed her a duty to eliminate the dangerous condition. She contends that even if the danger was known or obvious, Nordstrom should have anticipated the harm to her.

---

[19] Pl.'s Opp. to Def.'s Mot. for Summ. J. at 15 (ECF No. 21).

Nordstrom bears the burden of showing that Dorfmeister was aware of the danger. Nordstrom has introduced no evidence showing that she perceived the combination of the high-heels, the unpinned pant leg, and the fitting platform to pose a risk of injury. It is for a jury to conclude whether Dorfmeister perceived and appreciated the danger such that it was "known" to her.

Similarly, whether the danger posed by the combination of the high-heel shoes, unpinned pant leg, and fitting platform would have been obvious to a reasonable person in Dorfmeister's position is not undisputed and rests upon credibility determinations. Nordstrom's employees did not perceive the unpinned pant leg to be a tripping hazard.[20] Shayegan testified in her deposition that she did not have any concern that the left pant leg could fold under the bottom of Dorfmeister's left heel.[21] Dorfmeister had previously stepped on and off the same platform with two unpinned pant legs in different high-heels without incident. Her prior successful navigation of the platform under similar circumstances may have disguised the danger. Dorfmeister contends Ghaffari "directed" her to step off the platform because "the only way to step back is to step off."[22] How Ghaffari's statement is construed is subject to differing interpretations. Whether Ghaffari's comment to "step back" meant "step off," given the platform's size and position, and Dorfmeister's observation to Ghaffari that she was "too close" to the mirror, is for the jury to decide. The directive to "step back" may have given Dorfmeister a false sense of security that interfered with her ability to perceive the danger. The risk Dorfmeister faced

---

[20] Shayegan Dep. Tr. at 82:17-82:23; Ghaffari Dep. Tr. at 53:20-53:24.

[21] Shayegan Dep. Tr. at 83:1-83:5.

[22] Dorfmeister Dep. Tr. at 10:23-10:24.

in stepping off the platform in high-heels was landing improperly and stumbling, not catching her heel in her pant leg. A jury could conclude from this evidence that a reasonable person in Dorfmeister's position, with the same knowledge, experience and perception, would not have recognized the danger until after falling.[23]

Whether Nordstrom's employees should have anticipated the danger to Dorfmeister is an open question. On one hand, Shayegan and Ghaffari stated in their depositions that they did not think the unpinned pant leg posed a tripping hazard. Shayegan was familiar with Dorfmeister, having interacted with her more than a hundred times in the past.[24] She attested that Dorfmeister "never ask [*sic*] my help, and I assume she is fine with it."[25] On the other hand, Ghaffari testified in her deposition that Dorfmeister "usually has this habit of stepping down and observing herself on her own," that "[i]t makes sense, because she probably wants to see how it is done on her own," and "[m]any customers do this because they want to see how their pants look pinned."[26] Shayegan stated that Dorfmeister said, "I want to go out and see in the outside mirror."[27] Ghaffari

---

[23] Nordstrom's reliance on *Milkowich v. Redner's Markets, Inc.* is unavailing. In *Milkowich*, the plaintiff injured herself when she attempted to push her shopping cart directly off the curb in front of defendant's grocery store rather than use the ramp located about four feet away. No. 17-4062, 2019 WL 1426727, at *1, 5 (E.D. Pa. Mar. 28, 2019). The court found the danger was both obvious and known, and the defendant could have reasonably expected its patrons to avoid the danger. *Id.* at *5.

Unlike in *Milkowich*, where the plaintiff made the independent decision to forgo the ramp, issues of fact exist as to whether Nordstrom's employees encouraged Dorfmeister to step off the fitting platform. The fact that Dorfmeister had no choice but to step off the platform to view herself farther away from the mirror, coupled with her prior successful navigations of the platform, may have concealed the danger. The risk of catching her stiletto heel in her pant leg is also secondary to the risk of wobbling or stumbling as she stepped down. In *Milkowich*, there was nothing concealing the danger and no secondary risk. *Id.* A jury could conclude that a reasonable person in Dorfmeister's position would not have perceived and appreciated this risk.

[24] Shayegan Dep. Tr. at 23:6-23:11.

[25] *Id.* at 67:22-68:4.

[26] Ghaffari Dep. Tr. at 45:1-45:11.

[27] Shayegan Dep. Tr. at 76:12-76:15.

even commented to Dorfmeister when she first saw her in the outfit, "wow, you have high heels, can you walk in them . . . . I was surprised to see her wear high heels with long pants."[28] She later told Dorfmeister that she should "step back" to gain a full view of the hemline, despite her earlier concern about Dorfmeister's ability to walk. Ghaffari was clearly aware of the danger posed by the high-heels and long pants. Ghaffari and Shayegan were also aware that Dorfmeister may step down from the platform in the middle of the fitting, with one unpinned pant leg. A reasonable jury weighing this evidence could conclude that Nordstrom should have anticipated the danger to Dorfmeister.

We decline to find as a matter of law that Dorfmeister knew the risk of stepping down from the platform at that time or that a risk of harm would be obvious to a reasonable person in her position. A jury must make that determination.

Nordstrom also argues that Dorfmeister's allegations that it was negligent for failing to have a railing or other stabilizing device near the platform should be dismissed because Dorfmeister has offered no expert testimony to show a design defect. Dorfmeister counters that she is not asserting a design defect claim regarding the lack of a railing, but rather offers that allegation to show Nordstrom acted unreasonably in failing to take safety precautions. She claims that expert testimony is not required to support this allegation because the lack of safety precautions is within the know-how of an ordinary person. There are issues of fact as to whether Nordstrom acted unreasonably in failing to provide a railing or other safety precaution. Whether a railing near the platform would have prevented the injury is within the ordinary knowledge of the jury. It is for the jury to decide

---

[28] Ghaffari Dep. Tr. at 40:23-41:7.

if, taking into consideration all the facts and circumstances, Nordstrom was negligent in failing to provide a railing or other stabilizing device near the platform.

## Conclusion

There are disputed facts bearing on whether the danger to Dorfmeister was known or obvious, and whether Nordstrom should have anticipated the harm. Therefore, we shall deny Nordstrom's motion for summary judgment.